# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COAL RIVER MOUNTAIN WATCH<br>38835 Coal River Rd., Whitesville, W.V. 25209<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR<br>1849 C Street NW, Washington, D.C. 20240<br><br>SALLY JEWELL, in her official capacity as Secretary of the Interior<br>1849 C Street NW, Washington, D.C. 20240<br><br>OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT<br>1951 Constitution Avenue NW,<br>Washington, D.C. 20240<br><br>JOSEPH PIZARCHIK, in his official capacity as Director of the Office of Surface Mining Reclamation and Enforcement<br>1951 Constitution Avenue NW,<br>Washington, D.C. 20240<br><br>Defendants | CIVIL ACTION NO. 1:13-cv-01606 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Plaintiff Coal River Mountain Watch ("Coal River") seeks declaratory and injunctive relief against the United States Department of the Interior and the Office of Surface Mining Reclamation and Enforcement ("OSM"), and their respective officials in their official capacities (collectively, "Defendants") for issuing a national rule ("2013 de facto rule") in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 706(2)(A) and 706(2)(D), and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1256(c). APA, 5 U.S.C. §§ 706(2)(A) and (D).

2. On August 20, 2013, OSM Deputy Director Glenda H. Owens wrote a letter ("2013 de facto rule") to the West Virginia Department of Environmental Protection ("WVDEP") setting forth OSM's "legal interpretation" of SMCRA, 30 U.S.C. § 1256. The letter concluded that the "use of the word 'shall' in an enforcement provision [here, 30 U.S.C. § 1256(c)] does not necessarily give rise to a mandatory, nondiscretionary duty."

3. In issuing the 2013 de facto rule, Defendants failed to publish notice in the Federal Register and allow interested parties an opportunity to comment, in violation of the APA. 5 U.S.C. § 553.

4. By concluding that SMCRA does not automatically terminate permits if three years pass without the commencement of mining activity under the permits' authorization, the 2013 de facto rule contradicts the plain language of SMCRA, 30 U.S.C. § 1256(c), and its implementing regulations, 30 C.F.R. § 773.19(e)(1).

5. OSM's issuance of the 2013 de facto rule was thus arbitrary and capricious and "not in accordance with law." 5 U.S.C. §§ 706(2)(A) and (D).

## JURISDICTION AND VENUE

6. Paragraphs 1-5 are incorporated here by reference.

7. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and SMCRA, 30 U.S.C. § 1276(a)(1).

8. Venue is proper in the United States District Court for the District of Columbia because this court has exclusive jurisdiction over action "by the Secretary promulgating national rules or regulations." 30 U.S.C. § 1276(a)(1).

9. Plaintiffs have filed a parallel action in the United States District Court for the Southern District of West Virginia based on the theory that the 2013 de facto rule is "other action constituting rulemaking," without national scope and therefore subject to exclusive jurisdiction in that court. 30 U.S.C. § 1276(a)(1). Plaintiffs intend to consolidate these actions if further information supports a characterization of OSM's rulemaking as either a national rule or a rule limited to West Virginia.

## PARTIES AND STANDING

10. Paragraphs 1-9 are incorporated here by reference.

11. Plaintiff Coal River is a non-profit membership organization incorporated in West Virginia that, through advocacy, local knowledge, and technical expertise, seeks to improve Appalachian communities adversely affected by coal mining.

12. Coal River's articles of incorporation, bylaws, and Board of Directors authorize it to bring this action on behalf its members.

13. The 2013 de facto rule allows expired mining permits to remain active. The 2013 de facto rule thus increases the potential for mining activity in areas where Coal River's members have economic, recreational, and aesthetic interests.

14. Coal River's members live and work in the vicinity of Coal River Mountain and other areas affected by OSM's 2013 de facto rule.

15. Coal River's members get their drinking water from wells located near mining sites where permits have expired but not yet terminated. Increased mining activity resulting from OSM's 2013 de facto rule would likely degrade the quality of their drinking water.

16. The increased mining activity resulting from OSM's 2013 de facto rule would alter the natural contours of mountain peaks and ridgelines on and around Coal River Mountain, which would diminish the aesthetic and psychological enjoyment that Coal River's members derive from the observing the natural beauty of the region.

17. Through petitioning the WVDEP to designate sites without a valid mining permit as "unsuitable for surface coal mining operations," Coal River and its members improve areas affected by coal mining. 30 U.S.C. § 1272(c). OSM's 2013 de facto rule prevents active permits from automatically expiring, limiting the ability of Coal River to file such petitions.

18. OSM's 2013 de facto rule causes economic harm to Coal River's members because it discourages the commencement of mining within the statutorily allotted three years, thus limiting employment and economic opportunities for Coal River's members. Conversely, terminating a permit automatically if three years pass without the commencement of mining activity under the permits' authorization incentivizes economic development.

19. In failing to adhere to the notice and comment procedures required by law before issuing the 2013 de facto rule, Defendants have deprived Coal River of the opportunity to influence public policy related to coal mining.

20. Coal River and its members depend on access to timely and accurate information to implement programs and activities to help conserve areas adversely affected by mining. OSM's failure to follow notice and comment procedures denied Coal River the ability to access information about the safety, economic, and aesthetic impacts of non-automatic permit termination.

21. Defendant United States Department of the Interior is a federal executive department responsible for oversight of OSM. The United States Department of the Interior has its headquarters in Washington, D.C.

22. Defendant Sally Jewell is Secretary of the Interior. Secretary Jewell is responsible for the administration, operations, and activities of the Department of the Interior, including oversight of OSM. In her official capacity, Secretary Jewell resides in Washington, D.C. Secretary Jewell is being sued in her official capacity only.

23. Defendant OSM is the lead agency in charge of coal mining activities, including issuing and overseeing federal regulations governing the state regulation of mining. OSM has its headquarters in Washington, D.C.

24. Defendant Joseph Pizarchik is the Director of OSM. Director Pizarchik is responsible for the administration, operations, and activities of OSM and its divisions. In his official capacity, Director Pizarchik resides in Washington, D.C. Director Pizarchik is being sued in his official capacity only.

## LEGAL BACKGROUND

25. Paragraphs 1-24 are incorporated here by reference.

26. Under the APA, a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (D) without observance of procedure required by law." 5 U.S.C. §§ 706 (2)(A) and 706(2)(D).

27. According to the APA, "[g]eneral notice of [a] proposed rule making shall be published in the Federal Register." 5 U.S.C. § 553(b). This notice must include, *inter alia*, "reference to the legal authority under which the rule is proposed." 5 U.S.C. § 553(b)(2).

28. After providing notice, the agency must also "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with our without opportunity for oral presentation." 5 U.S.C. § 553(c).

29. SMCRA and its implementing regulations explicitly require a permit to terminate if no mining activity has occurred under the permits' authorization after three years; SMCRA 30 U.S.C. § 1256(c) states "[a] permit shall terminate if the permittee has not commenced the surface coal mining operations covered by such permit within three years of the issuance of the permit." SMCRA, 30 U.S.C. § 1256(c).  OSM regulations mirror this language. 30 C.F.R. § 773.19(e)(1).

30. As part of its approved state program, the West Virginia state legislature enacted West Virginia Code, 22-3-8(a)(3), which states "[a] permit terminates if the permittee has not commenced the surface mining operations covered by the permit within three years of the date the permit was issued." West Virginia Code, 22-3-8(a)(3).

6

## FACTUAL BACKGROUND

31. Paragraphs 1-30 are incorporated here by reference.

32. Marfork Coal Company ("Marfork") is a coal mining company located and incorporated in West Virginia, with at least sixty five (65) permits for coal mining from the WVDEP.

33. On June 6, 2008, Marfork received a mining permit for the Eagle No. 2 mine (Permit No. S-3028-05) in Raleigh County, W.V.

34. On June 6, 2011, Marfork's Eagle No. 2 mining permit automatically expired because Marfork failed to commence mining activity under that permit's authorization within three years of the permit's issuance.

35. Marfork failed to timely apply to WVDEP for a permit extension for the Eagle No. 2 mine.

36. On January 9, 2012, Mr. Robert Goodwin of Coal River complained to WVDEP that Marfork's permit for the Eagle No. 2 mine automatically terminated as a matter of law on June 6, 2011, because Marfork failed to commence mining activity under that permit's authorization within three years.

37. On January 12, 2012, three days later, WVDEP sent a letter to Marfork informing the company that it needed to request an extension for the Eagle No. 2 mining permit prior to the three-year anniversary date of that permit's issuance, which had passed on June 6, 2011.

38. On January 31, 2012, more than six months after the permit was set to expire, Marfork asked to extend the Eagle No. 2 mining permit; on February 9, 2012, WVDEP granted an extension of that permit through June 6, 2013.

39. On February 13, 2012, Mr. Goodwin filed another complaint, this time with OSM, similarly stating that Marfork's Eagle No. 2 mining permit automatically terminated as a matter of law on June 6, 2011.

40. On February 15, 2012, OSM sent WVDEP a Ten Day Notice letter requesting an explanation from the WVDEP about the circumstances surrounding Marfork's Eagle No. 2 mining permit.

41. On February 27, 2012, WVDEP responded to OSM's Ten Day Notice letter, explaining that, per an internal 1993 policy, WVDEP must give a permit holder notice before terminating a mining permit, and thus WVDEP did not automatically terminate Marfork's permit despite Marfork's failure to commence mining activity within three years.

42. OSM has not approved WVDEP's 1993 internal agency policy.

43. On June 8, 2013, in response to WVDEP's explanation, the Charleston Field Office of OSM sent a letter to WVDEP notifying the agency that SMCRA requires a mining permit to terminate if three years pass without the commencement of mining activity under the permit's authorization, and that "nothing in [West Virginia's] approved state program requires WVDEP to provide [notification of permit termination]." Because of this, the Field Office found WVDEP's self-imposed notice requirement, which created permissive terminations, to be arbitrary and capricious for "clearly exceed[ing] [WVDEP's] legal authority under the State's approved permanent regulatory program." Accordingly, the Field Office concluded that WVDEP had failed to "take appropriate action to cause [this permit] violation to be corrected."

44. On June 18, 2012, WVDEP requested that OSM headquarters review the Charleston Field Office's decision.

45. On August 20, 2013, the Deputy Director of OSM, Glenda H. Owens, sent a letter to WVDEP ("2013 de facto rule") overturning the Charleston Field Office, setting "forth OSM's legal interpretation" of SMCRA. In her letter, Deputy Director Owens stated that the "use of the word 'shall' in an enforcement provision [here, 30 U.S.C. § 1256(c)] does not necessarily give rise to a mandatory, nondiscretionary duty." She thus concluded: "if mining operations do not commence within three years [of a permit's issuance], and no extension is granted, the permit will not terminate automatically; rather, the permit remains valid until the regulatory authority takes an affirmative action to terminate it." She found this interpretation of SMCRA to be "permissible," "reasonable," and "preferable."

46. As of the filing date of this complaint, October 21, 2013, over five years have passed without any mining activity at Marfork's Eagle No. 2 mine.

47. There are currently 143 active mining permits in West Virginia that should have already expired due to the permit holders' failure to commence mining activity under the permits' authorization within three years.

48. WVDEP additionally has allowed mining to commence at over 100 West Virginia mines after the permits should have already expired.

49. OSM's 2013 de facto rule has thus far allowed WVDEP to overlook a total of 246 permit violations.

50. Upon information and belief, OSM then forwarded the 2013 de facto rule to its field offices, as reference on OSM's authoritative interpretation of SMCRA.

51. Upon information and belief, OSM's Denver field office disseminated this letter to interested parties for reference in ongoing litigation.

9

52. Upon information and belief, many permit violations mirroring those in West Virginia exist nationwide.

## CLAIMS FOR RELIF

### Count 1

**OSM's 2013 de facto rule is arbitrary and capricious and not in accordance with law for failing to adhere to the APA's notice and comment procedures.**

53. Paragraphs 1-52 are incorporated by reference.

54. OSM's 2013 de facto rule grants mining permit holders new rights, not found in SMCRA or SMCRA's implementing regulations. *See* 30 U.S.C. 1201 *et seq.*; *see also* 30 C.F.R. § 700 *et seq*.

55. Defendants failed to publish notice of the proposed rule in the Federal Register containing "a reference to the legal authority under which the rule is proposed" or "the substance of the rule." 5 U.S.C. § 553. Defendants also failed to allow "interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments," in violation of section 553 of the APA. 5 U.S.C. § 553.

56. OSM's issuance of the 2013 de facto rule was thus arbitrary and capricious and not "in accordance with law." 5 U.S.C. §§ 553, 706(2)(A) and 706(2)(D).

### Count 2

**The 2013 de facto rule is arbitrary and capricious and not in accordance with law because it conflicts with SMCRA and its implementing regulations.**

57. Paragraphs 1-56 are incorporated by reference.

58. OSM's 2013 de facto rule is inconsistent with SMCRA's requirement that a "permit shall terminate if the permittee has not commenced" operations within three years. 30 U.S.C. § 1256(c); 30 C.F.R. § 773.19(e)(1).

59. OSM's issuance of the 2013 de facto rule was thus arbitrary and capricious as it is "not in accordance with law." 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIF**

Wherefore, Plaintiff requests that this Court:

(1) Declare pursuant to 28 U.S.C. § 2201 that the 2013 de facto rule is a national rule-making under 30 U.S.C. § 1276(a)(1);

(2) Declare, pursuant to 28 U.S.C. § 2201, that Defendants have violated the APA;

(3) Vacate the 2013 de facto rule;

(3) Award Plaintiff attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4) Award Plaintiff all other relief the Court deems just and proper.

DATED:   October 21, 2013                    Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　____/s/Thomas Gremillion_____
　　　　　　　　　　　　　　　　　　　　　Thomas Gremillion, Staff Attorney
　　　　　　　　　　　　　　　　　　　　　(D.C. Bar No. 1005864)

　　　　　　　　　　　　　　　　　　　　　Hope Babcock, Director
　　　　　　　　　　　　　　　　　　　　　(Fed/D.C. Bar No. 14639)

　　　　　　　　　　　　　　　　　　　　　Institute for Public Representation
　　　　　　　　　　　　　　　　　　　　　Georgetown University Law Center
　　　　　　　　　　　　　　　　　　　　　600 New Jersey Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　Washington, DC  20001
　　　　　　　　　　　　　　　　　　　　　Phone: 202-662-9535
　　　　　　　　　　　　　　　　　　　　　Fax: 202-662-9634

　　　　　　　　　　　　　　　　　　　　　*Counsel for Coal River Mountain Watch*